IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANNE M. NESTOR** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Commissioner of Social** | : | |
| **Security** | : | **No. 13-1098** |

## REPORT AND RECOMMENDATION

RICHARD A. LLORET                                                                                  September 15, 2014
U.S. Magistrate Judge

      Anne M. Nestor has brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Nestor alleges that the Commissioner committed reversible error by (1) failing to find that Nestor's alleged cognitive impairment is a severe impairment; (2) failing to incorporate all of Nestor's alleged limitations into the hypothetical posed to the vocational expert; and (3) failing to properly assess the credibility of Nestor's testimony. Nestor seeks summary judgment in her favor or, in the alternative, that the case be remanded for further proceedings. After careful consideration, I find Nestor's claims to be without merit.  Accordingly, I respectfully recommend that Nestor's Request for Judicial Review be DENIED, the decision of the Commissioner be AFFIRMED, and the matter DISMISSED with prejudice.

I.     **PROCEDURAL HISTORY**

An Administrative Law Judge ("ALJ") denied Nestor's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 27, 2012. Applying the five-step sequential analysis,[1] the ALJ found that Nestor had not engaged in substantial gainful activity since July 26, 2009, the alleged onset date. R. 10. The ALJ determined that Nestor suffered from the following severe impairments: mood disorder and diabetes mellitus with loss of visual field. *Id.* Neither of these impairments met the listed criteria for a *per se* finding of disability. R. 11-13. The ALJ found that Nestor had the residual functional capacity to perform the full range of light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the exception of only being able to perform "simple, repetitive, routine tasks in jobs not requiring depth perception." R. 13. More specifically, the ALJ found that the jobs that Nestor can perform, that exist in significant numbers in the economy, are those of a racker in a bakery and a cleaner. R. 17. On February 6, 2013, the Appeals Council denied Nestor's appeal, making the ALJ's opinion the final ruling of the Commissioner. R. 2-4. For the reasons set forth below, I find that the ALJ's opinion is supported by substantial evidence.

II.    **FACTUAL BACKGROUND**

Anne Marie Nestor was 52 years old in January 2010 when she filed for DIB and SSI. R. 131. She was 54 at the time of the ALJ's decision denying her claims. R. 14.

---

[1] For this analysis, the ALJ considers whether a claimant: (1) is engaged in substantial gainful employment; (2) has one or more severe impairments, which significantly limit her ability to perform basic work; (3) has impairments that meet or equal the criteria associated with impairments in the Social Security Regulations so as to mandate a disability finding; (4) has a Residual Functional Capacity ("RFC")to perform work with her limitations and can return to her previous work with that RFC; and (5) can perform any other work existing in the national economy.  See 20 C.F.R. § 416.920(a)(4)(i)-(v).

Nestor is originally from Haiti, and has an eighth grade education level. *See* R. 12, 14, 29. She has been in the United States since 1976, when she moved to New York. R. 401. Nestor moved from New York to Philadelphia in approximately 2008. *See id.* The record suggests that Nestor likely has a history of developmental delay and learning disorders, although the record contains no definitive diagnosis. *See, e.g.* R. 347, 368, 372, 405. In 2011, approximately one year after filing her initial claim for DIB and SSI, Nestor began to seek medical evaluation for memory loss and possible cognitive disorders. *See* R. 368-73. It is those alleged disabilities that are at the heart of Nestor's current motion. Nestor's medical records do not contain a diagnosis for any condition that would cause memory loss, or of which memory loss is a predominant symptom. Her records do indicate that Dr. Annemarie Gaskin, of the Sleep Disorders Center, has ordered a variety of tests to rule out a variety of conditions that might cause or explain memory loss:

> I have asked her to get MRI of the brain with and without contrast to rule out structural abnormalities as well as an infectious process. She has traveled and concern for a parasite infection is contemplated as well. EEG to look for encephalopathy is recommended. I have also recommended a slew of blood work to rule out infectious and autoimmune processes. Alzheimer's disease should be considered as well despite the early age. Also pseudodementia related to underlying psychiatric disease is also to be considered. I have recommended neuropsychiatric testing.

R. 372. There is nothing in the record to show whether any of the recommended testing was done, or what outcomes were reported.

## III.  DISCUSSION

A claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905; *see also Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009). In reviewing an ALJ's disability determination, I must accept all the ALJ's fact findings if supported by substantial evidence or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971)(citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, with respect to the ALJ's legal conclusions and application of legal principles, I must conduct a "plenary review." *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006).

Here, Nestor contends that the ALJ erred (1) by failing to find that Nestor has a cognitive disorder that amounts to a severe impairment; (2) by failing to incorporate all of Nestor's conditions into the hypothetical the ALJ posed to the Vocational Expert; and (3) by failing to properly assess Nestor's credibility. *See generally*, Pl.'s Br. and Stmt. of Issues in Supp. of Req. for Judicial Rev ("Pl.'s Br."). After careful, independent review of the record, I find the ALJ's opinion to be supported by substantial evidence.[2]

### A. <u>Nestor Does Not Have a Diagnosed Cognitive Disorder</u>

Nestor alleges that the ALJ erred in failing to find that her cognitive disorder amounts to a severe impairment. The Commissioner contends that the record does not support a finding of severe impairment. *See* Def.'s Resp. to Req. for Rev. of Pl. at 3-5 ("Def.'s Resp."). I agree with the Commissioner.  Nestor contends that important medical reports were ignored, and that she "suffer[s] from a Cognitive Disorder which

---

[2] Nestor also contends that the Commissioner failed to carry the burden of demonstrating that there were jobs in the economy that Nestor could perform. Pl.'s Br. at 4-6.  Nestor's support for this claim seems to derive from the three other arguments she has raised. *See id.* at 6.  Because I have found no merit in any of those claims, *see infra*, I likewise find this claim to be without merit.

has been provisionally diagnosed as Alzheimer's Dementia." Pl.'s Br. at 9; Pl.'s Reply Br. at 1. After a careful review of the record, I find both of these claims to be without merit.

The ALJ gave a lengthy explanation of the evidence of record, and provided a detailed discussion of the evidence he credited and discredited, and his reasons for doing so. The ALJ gave "great weight" to the psychiatric evaluation of Dr. Harold Graff of Northwestern Health Service ("NHS") - - the facility where Nestor has gone for treatment. The ALJ gave great weight to Dr. Graff's conclusion that Nestor "may have some mild short term memory loss, but her mental status does not show any severe problems" because Dr. Graff's assessment "is consistent with the psychiatric treatment notes, his assessed GAF score, the claimant's activities of daily living, and the record as a whole." R. at 15. Additionally, the ALJ discussed and explained his reasons for failing to credit a single GAF score of 40. *Id.* "I do not credit the GAF score of Dr. Petrovic as it appears inconsistent with the benign findings in the Northwest Human Services treatment notes and represents only a snapshot in the claimant's functioning." *Id.* While the ALJ did not discuss the medical records pertaining to Nestor's two visits to Dr. Gaskin, he did cite to the records, and acknowledged, accurately, "this condition was not confirmed with evaluation, there has been no diagnosis . . . and the treatment records show the claimant's concentration to be normal." R. 11 (ALJ Opinion); R. 372 (Dr. Gaskin's Report, cited to as Exhibit No. 14F). As discussed above, Dr. Gaskin ordered a variety of testing to further investigate the claimed memory loss, but made no diagnosis. *See supra* at 3. There was no evidence before the ALJ as to whether any of the testing Dr. Gaskin recommended was completed, and certainly no evidence that the testing revealed a disabling condition.

The portions of the record cited to support Nestor's claim that she has been diagnosed with Alzheimer's dementia speak of ruling out that diagnosis, not of affirmatively diagnosing Nestor. *See* R. 377 (Dr. Gaskin: "She may have an underlying learning disability, but concerns for a superimposed process is raised[,]" discussing tests recommended to provide further information); R. 405 (Dr. Petrovic: "r/o dementia"). There is nothing in the record before the ALJ to affirmatively point to a diagnosis of dementia, whether it be Alzheimer's based or otherwise. The ALJ appropriately exercised his duty to evaluate the medical and other evidence before him.

Finally, the ALJ detailed Nestor's subjective complaints and noted that "the record supports some of claimant's complaints[.]" R. 16. Ultimately, the ALJ found that while the record supported some level of impairment, the ALJ did "not fully credit claimant's allegations of total disability." *Id.* In light of this, the ALJ "factored some of claimant's reported functional limitations into the RFC." *Id.*

Based upon my independent review of the record, I find no error in the ALJ's opinion. His discussion of all of the evidence was thorough, and enables me to find that his opinion is supported by substantial evidence.

### B. **The ALJ's Hypothetical to the Vocational Expert Was Appropriate.**

Next, Nestor alleges that the ALJ asked two hypothetical questions to the vocational expert, then inappropriately relied on the response to the question that did not incorporate all of Nestor's issues. With regard to hypothetical questions to vocational experts, the Court of Appeals has stated that "'[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's

individual physical and mental impairments.'" *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). When posing a hypothetical question to a vocational expert the ALJ's question "must reflect *all* of a claimant's impairments." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir.1987) (emphasis added). The expert's response will not be considered substantial evidence where there is medically uncontroverted evidence in the record regarding an impairment that is not included in the hypothetical. *Podedworny*, 745 F.2d at 218 (citing *Wallace v. Secretary of Health & Human Servs.*, 722 F.2d 1150, 1155 (3d Cir.1983)).

Here, the ALJ posed two hypothetical questions. The first question was as follows:

> The vocational profile will be an individual who is over 50 at the whole time and soon to be 54 with limited education received in Haiti. But obviously she is capable of the English language. And the prior work you just described. If the overall physical capacity is a range of light work but there's some field limitations in the right eye and that would certainly affect depth perception. And also it would have to be limited to simple routine and repetitive type work. That's the first hypothetical.

R. 45. Based upon that hypothetical, the vocational expert found that Nestor could maintain jobs as a racker in a bakery and a cleaner/housekeeper. *See* R. 17. For the second hypothetical, the ALJ asked the following:

> I'm going to ask next to use the same vocational profile but to take the testimony as it came out today with all the features that were presented, the problems with the vision as they were described, the memory problem forgetting to turn off the stove, I guess that depends on whether or not it's gas or electric but nonetheless. [sic] There seemed to be, at least occasionally, some problems with the medication follow through and that seems to be because of the memory problem she described today.

R. 46. Based upon the second hypothetical, the vocational expert testified that Nestor would be precluded from competitive employment. *Id.*

The issue before this court is whether the first hypothetical – the one ultimately relied upon by the ALJ – reflects all of Nestor's impairments. The Commissioner argues that it does. Def.'s Resp. at 5-9. I agree with the Commissioner. The first hypothetical accurately captures all of the claimant's impairments. This is not a factual situation like the one that arose in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004). There, the claimant "often" suffered from "'deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner (in a work setting or elsewhere).'" *Ramirez*, 372 F.3d at 552 (quoting Appendix at 93).  In the ALJ's hypothetical to the vocational expert, the only reference to the plaintiff's cognitive limitations was "no more than simple one or two-step tasks; no travel outside the workplace; and a reasonable opportunity to receive and make personal telephone calls." *Id.* at 554. The Court of Appeals found that the hypothetical failed to adequately address plaintiff's limitations with regard to concentration, persistence and pace. *Id.* More specifically, the Court of Appeals stated:

> [t]his omission from the hypothetical runs afoul of our directive in *Chrupcala* that a hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments, as well as our statement in *Burns* that great specificity is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical.

*Ramirez*, 372 F.3d at 554-55 (quoting *Chrupcala v. Heckler*, 829 F.2d 1269 1276 (3d Cir. 1987) and *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002)) (internal citations and quotations omitted).

Here, the ALJ's hypothetical did encompass Nestor's cognitive limitations. The ALJ made specific findings, supported by substantial evidence, that Nestor's memory loss was not severe. R. 11. He found that memory loss was not confirmed with evaluation, that there was no actual diagnosis of memory loss within the record, and that Nestor's treatment records demonstrated that her levels of concentration were normal. *Id.* With regard to Nestor's mood disorder, which the ALJ found to be "severe" because it imposed "more than a minimal limitation upon the claimant's ability" to perform the demands of work, R. 10, the ALJ gave "great weight" to the finding of one of Nestor's treating physicians that "she may have some mild short term memory loss, but her mental status does not show any severe problem." R. 15. Finally, the ALJ found that Nestor has mild difficulty with concentration, persistence and pace. R. 12. Based upon all of this, the ALJ found that Nestor had the RFC to perform light work, but with the following pertinent limitations: "due to her diminished capacity for mental focus and loss of visual fields, she can perform simple, repetitive, routine tasks not requiring depth perception." R. 16.  That very language was echoed in the ALJ's first hypothetical to the vocational expert:

> If the overall physical capacity is a range of light work but there's some field limitations in the right eye and that would certainly affect depth perception.  And also it would have to be limited to simple routine and repetitive type work.

R. 45.  Accordingly, pursuant to *Ramirez*, the first hypothetical adequately reflected Nestor's cognitive impairments. The second hypothetical, which Nestor urges should have been used by the ALJ, reflects impairments that Nestor testified to but that the ALJ ultimately found to be unsupported by the record. *See* R. 16 ("I do not fully credit claimant's allegations of total disability and only partially credit this testimony.").  There

9

was no medically uncontroverted evidence of record documenting the impairments contained within the second hypothetical. *See Podedworny,* 745 F.2d at 218. I find no error with regard to the hypothetical given to the vocational expert.

### C.     **The ALJ Properly Assessed Nestor's Credibility**

Finally, Nestor contends that the ALJ improperly assessed her credibility insofar as "the specific reasons he provided [for finding her testimony not entirely credible] were erroneous and unpersuasive." Pl.'s Br. at 14.  I disagree.  The ALJ provided a detailed and balanced discussion of the medical records and other evidence presented for his consideration. *See* R. 15. Following that discussion, the ALJ stated that "[t]he medical evidence documents some limitations due to claimant's impairments, but few significant findings. . . ." R. 16.  Then, noting Nestor's mild immediate memory impairment, and that her functioning improved with medication, the ALJ "factored some of claimant's reported functional limitations into the RFC." *Id.* To support her objection, Nestor cites to Social Security Ruling 96-7p, found at 61 Fed. Reg. 34483-01 (July 2, 1996). The stated purpose of the ruling is:

> to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision.

SSR 96-7p, 61 Fed. Reg. 34483-01 at 34484.  Nestor focuses on language that explains what amounts to an insufficient discussion of credibility by an ALJ.  *See id.* at ¶ 5.  I find the more pertinent language to be that which explains what an ALJ must consider for a credibility finding to be sufficient:

> In determining the credibility of an individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining

> physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

*Id.* at ¶ 4.

Here, the ALJ did not "make a single conclusory statement" about Nestor's credibility, or "simply recite the factors" he was to consider. *Id.* at ¶ 5. To the contrary, he provided a detailed and thoughtful discussion of all of the evidence before him, and explained why he found Nestor's statements to be only partially credible.[3] The ALJ's findings regarding credibility are "grounded in the evidence and articulated in [his] opinion.]" *Id.* at 34485-86.

## IV. RECOMMENDATION

Based upon the foregoing discussion, I respectfully recommend that Plaintiff's Motion be DENIED, the ALJ's opinion, being the final decision of the Commissioner, be AFFIRMED, and the case be DISMISSED with prejudice.

                                              BY THE COURT:

                                              /s/ Richard A. Lloret
                                              RICHARD A. LLORET
                                              U.S. MAGISTRATE JUDGE

---

[3] I find the ALJ's statement that "[t]he testimony given would seem to comport to claimant's symptoms when she was at her worst, and not her capacity to function when she takes her medication and regularly attends treatment[,]" R. at 16, to be gratuitous, rather than lay opinion of the ALJ as Nestor suggests. *See* Pl.'s Br. at 14. The record as a whole supports the ALJ's finding of limited credibility.